UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT CHATTANOOGA

| | | |
|---|---|---|
| GARY DUMARS, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | No. 1:08-CR-02/ 1:09-CV-162 |
| | ) | Chief Judge Curtis L. Collier |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Respondent. | ) | |

## **M E M O R A N D U M**

Petitioner Gary Dumars ("Petitioner") filed a *pro se* motion to vacate, set aside, or correct sentence pursuant to 28 U.S.C. § 2255 (Court File No. 20). Pursuant to the Court's Order (Court File No. 21), the United States filed a response (Court File No. 24). Petitioner filed a reply (Court File No. 28). This Court initially sentenced Petitioner to 180 months incarceration on May 1, 2008, after Petitioner pleaded guilty on January 3, 2008 to Count One of the Indictment, which charged him with "knowingly attempting to persuade, induce, and entice an individual who had not attained the age of eighteen years to engage in sexual activity by using a facility and means of interstate commerce, i.e., a computer," in violation of 18 U.S.C. §§ 2422(b). Judgment was entered on June 9, 2008 (Court File No. 16). Petitioner timely filed his § 2255 motion on June 16, 2009 (Court File No. 20).[1]

Petitioner alleges a number of constitutional rights have been violated and his judgment

---

[1] There is a general statute of limitations for § 2255 motions of one year from the entry of final judgment. Petitioner's motion, however, is timely under 28 U.S.C. § 2255(f)(1) and Fed. R. App. P. 4(b)(1) because the motion was placed in the prison mail system on June 11, 2009, and the one year deadline would have been June 23, 2009, as judgment only becomes final on the date upon which the time for filing an appeal expires - here, June 23, 2008. *See Sanchez-Castellano v. United States*, 358 F.3d 424, 425 (6th Cir. 2004); Fed. R. App. 4(b)(1)(A) (2008).

should be vacated, set aside, or his sentence corrected. However, he fails to support his claims with a factual basis, and he has procedurally defaulted the majority of his claims by not raising them on direct appeal.

The Court finds the materials thus submitted, together with the record of the underlying criminal case (1:08-CR-02), conclusively show Petitioner is not entitled to relief on any of the claims asserted in his petition. Accordingly, the Court will decide this matter without an evidentiary hearing, *see United States v. Todaro*, 982 F.2d 1025, 1028 (6th Cir. 1993), and will **DENY** Petitioner's motion for the reasons stated herein.

I. **RELEVANT FACTS AND PROCEDURAL HISTORY**

The underlying facts supporting Petitioner's conviction were stipulated to by Petitioner in his plea agreement and presentence report:

> On June 5, 2007, Knoxville law enforcement was contacted by the Canon City Police Department, Canon City, Colorado. An investigator advised that she had been involved in an online undercover investigation of the Yahoo screen name of "gsteen1" and email account of gsteen1@yahoo.com. The investigator advised that the user had solicited to have sex with a minor female and had distributed images of child pornography via the internet to the undercover account of the investigator.
>
> On July 7, 2007, a law enforcement officer, acting in an undercover capacity, and using an undercover screen name, and posing as a single mother of a seven-year-old girl, sent an email to the account of gsteen1@yahoo.com. The email stated she and the Colorado investigator "share[d] the same interests in men and our kids." On the same day, gsteen1@yahoo.com replied, saying he would "love to get to know you and yours intimately." Additionally, gsteen1@yahoo.com sent two offline Yahoo messages to the undercover account in an attempt to initiate a chat conversation.
>
> From July 8, 2007 to July 22, 2007, the undercover officer and "Gsteen1" exchanged a series of emails and chat messages. During the first chat, "Gsteen1" revealed his name was "gary." The conversations often revolved around the subject of incest and family sex. "Gsteen1" revealed, in part, "I love family life...I raised the kids by myself...love to have a woman that enjoys what I do...sex within the family..do i

2

shock u...??" When asked what his desires would be with "Amy," the seven-year-old girl, "Gsteen1" stated, "well I got to get to know u and her first...love to teach her about men...to guide her so she would love sex." The undercover agent then reiterated that her daughter, Amy, was only seven years old. "Gsteen1" stated, "good age to start teaching her. Love to be able to teach her...all about sex" and "she needs with me to be taught to jack me and suck me."

On July 10, 2007, law enforcement received an email from the email account of "Gary Dumars" garydumars@bellsouth.net. The email subject was "what u like". The email message implored "Gina," the undercover officer, to commit a sex act upon herself while viewing the attached images. The email contained an attachment of five pornographic images. One of the images had the file name "_Mom_son7.jpg". This image depicted a nude, adult female, lying on a bed, engaging in sexual intercourse with a nude minor boy. The boy appears to be under the age of twelve. The law enforcement officer captured and documented the IP address, time, and date of the computer that distributed the child pornography images.

On July 11, 2007, law enforcement, acting in an undercover capacity, received an email from the account of gsteen1@yahoo.com. The subject line of the email was: "more of what u like." The message of the email stated the following: "ur turn...smiling." Attached to the email was a compressed file called "attachements.zip." The file contained four pornographic images. Two of the four images contained child pornography. One of the images depicted a minor prepubescent female being penetrated by an adult male. Another image contained within the attachment depicted a minor prepubescent female performing oral sex on an adult male.

On July 11, 2007, Bellsouth responded to an administrative summons with the following information related to the IP address from which the email containing child pornography images was distributed:

Contact information
Name: Gary Dumars
Email Login: garydumars
Phone: Home (removed)
Address: (removed)
City, ST, Zip: Niota, TN 37826

On July 12, 2007, during another Yahoo chat session, Gary Dumars instructed "Gina" to take pornographic photos of her daughter for him, stating, "I know if u sell stuff on ebay . . . that u have to have a digital camera. . . so this is what I want u to do . . . take some nude pics of her . . . and send them to me."

On August 19, 2007, law enforcement executed a search warrant on Petitioner's

3

house in Niota, Tennessee. Officers then seized an extensive amount of child pornography in the possession of Petitioner. Petitioner admitted to having distributed child pornography to several individuals and to engaging in an online chat with two women who were interested in molesting children.

(Court File No. 3, pp. 3-9).

The 2006 version of the United States Sentencing Guidelines was used in the calculation of Petitioner's offense level. Petitioner's base offense level was a 24, based on USSG § 2G1.3. A two-level enhancement was imposed for use of a computer, pursuant to USSG § 2G1.3(b)(3). An eight-level enhancement was also imposed for Petitioner's solicitation of a minor less than twelve years old, pursuant to USSG § 2G1.3(b)(5). A cross-reference was then made to § 2A3.1 for conduct described in 18 U.S.C. § 2242, pursuant to § 2G1.3(c)(3). The base offense level under § 2A3.1 was 30, with a four-level addition for the victim having not yet attained the age of twelve years, and a two-level increase for the use of a computer in the offense. The resulting offense level after the cross-reference was thus 36. After a three-level reduction for acceptance of responsibility, Petitioner's total offense level was 33.

Petitioner had 3 criminal history points, which included 2 points for being on probation at the time of the instant offense. This put Petitioner in Criminal History Category II. As a 33/II offender, Petitioner's advisory Guidelines range was 151 to 188 months. Petitioner was also subject to a statutory minimum sentence of 120 months under 18 U.S.C. § 2422(b).

The Court sentenced Petitioner to 180 months incarceration. Subsequently, Petitioner filed a § 2255 motion to vacate or set aside the judgment or to correct the sentence. (Court File No. 20).

## II. STANDARD OF REVIEW

Section 2255 of Title 28 of the United States Code permits a prisoner in custody under

sentence of a federal court to move the court which imposed the sentence to vacate, correct, or set aside the sentence, on the grounds:

> the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack . . . .

28 U.S.C. § 2255. Petitioner has the burden of establishing any claim asserted in the petition. *See Bowers v. Battles*, 568 F.2d 1, 5 (6th Cir. 1977). It is a "well-settled principle that to obtain collateral review relief a prisoner must clear a significantly higher hurdle than would exist on direct appeal." *Fair v. United States*, 157 F.3d 427, 430 (6th Cir. 1998) (citing *United States v. Frady*, 456 U.S. 152, 166 (1982)).

Where a constitutional error is alleged in order to obtain relief under § 2255, the record must reflect a constitutional error of such magnitude that it had a substantial and injurious effect or influence on the proceedings. *See Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993); *Watson v. United States*, 165 F.3d 486, 488 (6th Cir. 1999). In order to prevail on a § 2255 motion alleging a non-constitutional error, a petitioner must show a "fundamental defect in the proceedings which necessarily results in a complete miscarriage of justice or an egregious error violative of due process." *Gall v. United States*, 21 F.3d 107, 109 (6th Cir. 1994). Thus, a "motion brought under § 2255 must allege one of three bases as a threshold standard: (1) an error of constitutional magnitude; (2) a sentence imposed outside the statutory limits; or (3) an error of fact or law that was so fundamental as to render the entire proceeding invalid." *Weinberger v. United States*, 268 F.3d 346, 351 (6th Cir. 2001).

### III.    DISCUSSION

Petitioner's § 2255 motion asserts six grounds upon which he contends there was constitutional error in his sentence: (1) the Court improperly calculated Petitioner's offense level for sentencing purposes; (2) Petitioner did not meet all of the elements of a 18 U.S.C. § 2422(b) violation; (3) Petitioner's speech with the undercover officer is protected by the First Amendment; (4) Petitioner received ineffective assistance of counsel that amounted to a violation of his Sixth Amendment right; (5) Petitioner's sentence amounts to cruel and unusual punishment in light of the recent deterioration of his health; and (6) Petitioner was denied a meaningful opportunity to file an appeal.

Because Petitioner has procedurally defaulted at least some of the grounds in his motion due to a failure to raise the grounds on direct appeal, the Court first analyzes Petitioner's allegation that he was denied a meaningful opportunity to appeal.

### A. Lack of Opportunity to File an Appeal

Petitioner claims he was denied a meaningful opportunity to file an appeal within the ten-day window because he lacked financial resources to hire an attorney and he was not advised that he could receive court appointed counsel. This statement is contradicted by the record of the Sentencing Hearing, which shows the Court specifically advised Petitioner of his right to appeal and to obtain court appointed counsel. (*See* Court File No. 19, pp. 21-22). Because the record is clear on this matter, the Court finds Petitioner's claim of ignorance with respect to the appeals process to be without merit.

Each of the remaining grounds except the claim of ineffective assistance of counsel is procedurally defaulted by the failure of Petitioner to raise the claims on direct appeal. *See Bousley v. United States*, 523 U.S. 614, 621-22 (1998) ("Where a defendant has procedurally defaulted a

6

claim by failing to raise it on direct review, the claim may be raised. . . only if the defendant can first demonstrate either 'cause' and 'actual prejudice,' or that he is 'actually innocent.'"). Petitioner does not allege actual innocence, and the Court now examines whether Petitioner can show cause and prejudice sufficient to excuse a procedural default of his claims.

### B. Improper Calculation of Offense Level in Sentencing Guidelines

In his first claim for relief, Petitioner claims the sentence imposed was longer than it should have been due to a miscalculation of his offense level under the Sentencing Guidelines. Petitioner specifically disagrees with the eight-level enhancement based on Petitioner's attempt to engage in sexual conduct with a child under the age of twelve. Petitioner states he did not attempt to engage in such conduct, he did not attempt to meet the child, and he did not attempt to have the child brought to him (Court File No. 20, p. 4). Petitioner also believes the USSG §2A3.1 cross-reference should not have applied because there was no "attempt" (*id.*).

Although Petitioner asserts he did not attempt this crime, his guilty plea to a violation of § 2422(b) is sufficient to establish the attempt. Further, as the Government points out, there is precedent that supports convictions for attempted sexual abuse of a minor even where no child existed (Court File No. 24, p. 14) (citing *United States v. First*, 226 F. App'x 576, 579 (6th Cir. 2007)). In *First*, the Sixth Circuit held the USSG § 2G1.3(c)(3) cross-reference to § 2A3.1 appropriate for cases where there were fictitious victims. *Id.*; *see also United States v. DeCarlo*, 434 F.3d 447, 457-58 (6th Cir. 2006) ("[t]he critical fact that renders defendant's conduct criminal in this case is not the act or the resulting harm, but the intent with which the act was done."). This background, in addition to Petitioner's own stipulations in the plea agreement, supports finding he attempted to engage in sexual conduct with a minor, pursuant to USSG § 2G1.3(a) (2006).

7

The Sentencing Guidelines § 2G1.3(c)(3) cross-reference also states "[i]f the offense involved conduct described in 18 U.S.C. § 2241 or § 2242, apply § 2A3.1... if the resulting offense level is greater than that determined above." The language of § 2242 plainly includes "attempts" to engage in a sexual act with someone who is "incapable of appraising the nature of the conduct." 18 U.S.C. § 2242(2)(B). Petitioner offers no support other than the bare conclusion that he did not commit criminal sexual abuse covered under the statute. Because the Court finds Petitioner's stipulated conduct covered by the criminal sexual abuse statute § 2242, the Court disagrees. In any event, Petitioner cannot show cause for his failure to raise this issue on appeal or prejudice resulting therefrom, thus the procedural default is not excused, and the first claim provides no basis for relief.

### C. Petitioner Did Not Meet Elements of 18 U.S.C. § 2422(b)

In his second claim for relief, Petitioner claims he did not commit all of the elements of the crime with which he was charged, namely, 18 U.S.C. § 2422(b). Specifically, Petitioner avers, his conduct did not constitute a substantial step toward the commission of the § 2422(b) offense, and therefore he has not received due process. This claim is a collateral attack on the sufficiency of the evidence against Petitioner, and it is procedurally defaulted, as it should have been raised on direct appeal and was not. *See Bousley* at 621; *United States v. Turner*, 272 F.3d 380, 389-90 (6th Cir. 2001) (holding an unconditional plea waives challenge to sufficiency of evidence on collateral attack). At sentencing, this Court advised Petitioner that he was giving up his right to require the Government to prove him guilty beyond a reasonable doubt with his unconditional guilty plea (Court File No. 18, p. 7). The Court recited the elements of the offense and confirmed with Petitioner he was pleading guilty to them intelligently and voluntarily (*id.*). Petitioner has not made a showing of cause and prejudice to excuse the procedural default. As such, the Court considers the claim to

8

be without merit.

### D. Violation of First Amendment Rights

In his third claim for relief, Petitioner claims his conduct of engaging in conversation with another adult - here, an undercover officer - is protected by the First Amendment. He claims the conversations were mere "fantasy" and did not amount to solicitation of a minor. Once again, the facts stipulated in Petitioner's plea agreement and extensive case law indicate otherwise. Petitioner entered a guilty plea to the § 2422(b) offense, and a review may not be sustained without sufficient showing of cause and prejudice. The Court finds no such showing in Petitioner's motion.

The claim is also without merit because there is not a First Amendment right to persuade minors to engage in illegal sex. *See United States v. Tykarsky*, 446 F.3d 458, 473 (3d Cir. 2006). Further, there are countless examples of conduct such as Petitioner's that is criminal, despite being conversational. Mens rea requirements in criminal statutes such as § 2422 have been held crucial in separating criminal conduct from constitutionally protected speech. *See United States v. Dhingra*, 371 F.3d 557, 561-62 (9th Cir. 2004). Petitioner's First Amendment claim can thus provide no basis for relief.

### E. Cruel and Unusual Punishment

Petitioner also claims his sentence is cruel and unusual punishment in violation of the Eighth Amendment in that his "health has deteriorated to such an extent that he cannot hope to survive the sentence imposed." (Court File No. 20, p. 10). Petitioner makes no allegations that he is enduring any particular cruel and unusual treatment during his sentence, and the simple fact that his health is declining does not establish a cognizable Eighth Amendment claim. *See Engle v. United States*, 26 F. App'x 394, 397 (6th Cir. 2001) (holding incarceration of terminally ill prisoner to be cruel,

9

but not unusual). Finally, to the extent Petitioner challenges the conditions of his incarceration, his claim is improperly raised, because it should be raised in a *Bivens* action. *See Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388 (1971). Because the cruel and unusual punishment claim does not have a remedy available under § 2255, the claim fails.

### F. Ineffective Assistance of Counsel

The Sixth Amendment provides, "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defense." A defendant has a Sixth Amendment right not just to counsel, but to "reasonably effective assistance" of counsel. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). In *Strickland*, the Supreme Court set forth a two-pronged test for evaluating claims of ineffective assistance of counsel:

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant makes both showings, it cannot be said that the conviction . . . resulted from a breakdown in the adversary process that renders the result unreliable.

466 U.S. at 687.

In considering the first prong of the test set forth in *Strickland*, the appropriate measure of attorney performance is "reasonableness under prevailing professional norms." *Id.* at 688. A defendant asserting a claim of ineffective assistance of counsel must "identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment." *Id.* at 690. The evaluation of the objective reasonableness of counsel's performance must be made "from counsel's perspective at the time of the alleged error and in light of all the circumstances, and the standard of review is highly deferential." *Kimmelman v. Morrison*, 477 U.S. 365, 381 (1986).

10

The second prong of the *Strickland* test requires the petitioner to show counsel's deficient performance prejudiced the defense. Thus, "[a]n error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." *Strickland*, 466 U.S. at 691. The petitioner must show "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. The *Strickland* Court emphasized both prongs must be established in order to meet the claimant's burden, and if either prong is not satisfied the claim must be rejected. *See id.* at 697. In *Hill v. Lockhart*, 474 U.S. 52 (1985), the Court held the two-part *Strickland* test is applicable in the context of guilty pleas. Therefore, the defendant must show defense counsel's representation fell below an objective standard of reasonableness and there was a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial. *Id.* at 58-59. To demonstrate a reasonable probability that he would have gone to trial, a defendant is required to present evidence apart from a lone assertion that, but for counsel's error, he would have pleaded not guilty and gone to trial. *See Parry v. Rosemeyer*, 64 F.3d 110, 118 (3d Cir.1995) ("A defendant alleging ineffective assistance of counsel in the guilty plea context must make more than a bare allegation that but for counsel's error he would have pleaded not guilty and gone to trial."); *United States v. Campbell*, 778 F.2d 764, 768 (11th Cir.1985) (bare allegation that defendant would not have pleaded guilty if her trial counsel had advised her properly is not sufficient to establish prejudice under *Strickland*).

Here, Petitioner's specific claims consist of counsel's failure to recognize Petitioner's conduct did not meet the elements of the offense and counsel's failure to object to the eight-level enhancement in Petitioner's offense level for the solicitation of a child less than twelve years old.

11

Petitioner alleges these errors improperly led him to plead guilty and increased his sentence. However, Petitioner has not carried his burden in proving ineffective assistance of counsel under either prong of the *Strickland* test.

Petitioner has not demonstrated that, but for error of counsel, he would not have pleaded guilty but would have proceeded to trial. Petitioner merely makes the assertion that he would have gone to trial, without bringing forth any additional evidence. This is clearly not enough to establish prejudice. *See Parry* at 118. The overwhelming amount of evidence against Petitioner, stipulated to in the plea agreement, is enough to show Petitioner met the elements of the relevant offense. With that in mind, it was not clearly unreasonable to tender a guilty plea. Additionally, counsel's failure to object to the eight-level enhancement did not fall below the level of reasonable professional norms, as required to meet the first part of *Strickland*. There was a strong legal and factual basis for the application of the enhancement to Petitioner's offense level, and Petitioner does not provide support for his claim that it was unprofessional for counsel to fail to make such an objection.

Indeed, Petitioner's failure to meet the second prong of *Strickland*, prejudice, demonstrates the futility of a hypothetical objection to the enhancement. As discussed above, Petitioner's sentence was ultimately calculated after a cross-reference to USSG § 2A3.1 for criminal sexual abuse. Because the Guidelines prescribed the § 2A3.1 cross-reference would apply when the resulting offense level under § 2A3.1 was greater than under § 2G1.3, the eight-level enhancement under § 2G1.3 carried no weight in the final determination of Petitioner's Guidelines sentence range (Court File No. 19, p. 3). Therefore, Petitioner has failed to show counsel's lack of objection was an unreasonable error and, even assuming it were, Petitioner has not shown it prejudiced him in length of sentence. Having failed to satisfy either prong of the *Strickland* test, the Court holds

Plaintiff's final claim provides no basis for relief.

IV. **CONCLUSION**

None of the grounds asserted by Petitioner support a finding his counsel's assistance was ineffective. The other claims by Petitioner have been procedurally defaulted in addition to being without merit. For the reasons stated above, Petitioner's sentencing was not in violation of the Constitution or laws of the United States or otherwise subject to collateral attack, and the motion to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255 will be **DENIED** (Court File No. 20).

In addition to the above, this Court **CERTIFIES** any appeal from this action would not be taken in good faith and would be frivolous. Therefore, any application by Petitioner for leave to proceed *in forma pauperis* on appeal will be **DENIED**. Fed. R. App. P. 24. Petitioner has failed to make a substantial showing of the denial of a constitutional right, *see* 28 U.S.C. § 2253; Fed. R. App. P. 22(b), or reasonable jurists would disagree on the resolution of this matter, thus a certificate of appealability **SHALL NOT ISSUE**. *Slack v. McDaniel*, 529 U.S. 473, 484-85 (2000).

**An Order shall enter.**

/s/
**CURTIS L. COLLIER**
**CHIEF UNITED STATES DISTRICT JUDGE**