UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT CHATTANOOGA

| | |
|---|---|
| UNITED STATES OF AMERICA | ) |
| | ) No. 1:08-CR-2 |
| v. | ) |
| | ) Judge Collier |
| GARY DUMARS | ) |

**M E M O R A N D U M**

Before the Court is Defendant Gary Dumars's motion for compassionate release. (Doc. 32.) Defendant seeks a reduced sentence pursuant to 18 U.S.C. § 3582(c)(1)(A)(I) based on his chronic obstructive pulmonary disease ("COPD") and other heart issues. (*Id.*) Specifically, Defendant contends these underlying conditions make him more susceptible to serious illness or death should he contract COVID-19. (*Id.*) Defendant filed a supplement to his motion, in which he restated the same grounds for relief. (Doc. 35.) The Court ordered the United States (the "Government") to respond to Defendant's motion. (Docs. 36, 37.) On November 12, 2020, the Government filed a response, in which it deferred to the Court's decision. (Doc. 39.)

**I.     ADMINISTRATIVE EXHAUSTION**

Under 18 U.S.C. § 3582, as amended by the First Step Act, Pub. L. 115-391, 132 Stat. 5194, a court may grant a motion for compassionate release filed by a defendant "after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." 18 U.S.C. § 3582(c)(1)(A). The exhaustion requirement in Section 3582(c)(1)(A) is a mandatory claim-processing rule a court must enforce when the Government properly invokes it. *United States v. Alam*, 960 F.3d 831, 833–34 (6th Cir. 2020).

Defendant filed his motion in this Court on June 19, 2020. (Doc. 32.) Defendant alleges he submitted his request to the warden of his facility on May 3, 2020, (Doc. 32, 35) but fails to provide evidence of doing so. However, as the Government has not invoked the mandatory claim-processing rule, the Court is not required to enforce it. Accordingly, the Court accepts Defendant's allegations and finds Defendant has "fully exhausted all administrative rights to appeal a failure." *See* 18 U.S.C. § 3582(c)(1)(A).

## II. BACKGROUND

On June 9, 2008, Defendant was sentenced to 180 months' imprisonment for his conviction for using a computer to entice a minor to engage in sexual activity, in violation of 18 U.S.C. § 2422(b). (Doc. 16.) Defendant is currently scheduled to be released from BOP custody on December 27, 2020. FEDERAL BUREAU OF PRISONS INMATE LOCATOR, https://www.bop.gov/inmateloc/ (last visited Nov. 30, 2020).

The BOP reports that Defendant's correctional facility, Devens Federal Medical Center, currently has no confirmed active case of COVID-19 among the inmate population and six confirmed active cases among staff. *COVID-19 Coronavirus: COVID-19 Cases*, Bureau of Prisons, https://www.bop.gov/coronavirus/ (last visited Nov. 4, 2020). The BOP further reports that forty-four inmates and eleven staff members have recovered from COVID-19 at Defendant's facility. *Id.* Two inmates at Devens have died from COVID-19. *Id.*

Defendant is seventy-two years old and suffers from COPD and other health conditions. (Docs. 32-1, 32-2.) Defendant's medical records reflect not only his history of COPD, but also a history of heart issues, including hypertension, hyperlipidemia, peripheral arterial disease, coronary artery disease, ischemic cardiomyopathy, and chronic systolic heart failure. (Docs. 32, 32-2.) Defendant summarizes his conditions as "end-stage organ disease." (Doc. 35.) In 2019, a

2

cardiologist evaluated Defendant and determined he "will need aggressive medical management for heart failure." (Doc. 32-2.) Defendant represents that he will need either a heart transplant or a ventricular assist device at some point in the future. (Doc. 32.)

Defendant's COPD and heart issues make his risk of illness from COVID-19 severe. Regarding COPD, the Centers for Disease Control (the "CDC") advises that people of any age who suffer from COPD "are at increased risk of severe illness from COVID-19." *People with Certain Medical Conditions, Ctrs. for Disease Control*, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last visited Nov. 30, 2020) (emphasis omitted). Likewise, an individual's risk of severe illness from COVID-19 increases if diagnosed with heart failure, coronary artery disease, cardiomyopathies, and hypertension. *Id.*

Defendant's age further exacerbates the risk COVID-19 poses to him. The CDC warns that the risks for severe illness from COVID-19 increase with age. *Older Adults*, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/older-adults.html (last visited Nov. 30, 2020). The CDC reports that "8 out of 10 COVID-19 related deaths reported in the United States have been among adults aged 65 years or older." *Id.* (emphasis omitted).

## III. ANALYSIS

By statute, the Court may grant a motion for a sentence reduction only when, "after considering the factors set forth in section 3553(a) to the extent that they are applicable," it finds that "extraordinary and compelling reasons warrant such a reduction" and that "such a reduction is consistent with the applicable policy statements issued by the Sentencing Commission." 18 U.S.C. § 3582(c)(1)(A). The Court of Appeals for the Sixth Circuit has described this as a three-step inquiry: the Court must first find that extraordinary and compelling reasons warrant a reduction; second, the Court must find that the reduction is consistent with applicable policy

3

statements from the U.S. Sentencing Commission, often USSG § 1B1.13; and third, the Court must consider the factors in § 3553(a), to the extent they apply. *United States v. Ruffin*, 978 F.3d 1000, 1004–05 (6th Cir. 2020).

However, the Court of Appeals has recently determined that, when a motion for compassionate release is filed by a defendant rather than the BOP, there is no "applicable" policy statement by the Sentencing Commission, and the district court may, therefore, omit the second step. *United States v. Jones*, -- F.3d --, No. 20-3701, 2020 WL 6817488, at *7–9 (6th Cir. Nov. 20, 2020). This is because, among other reasons, the text of § 1B1.13 refers only to motions filed by the Director of the BOP. *Id.* at *7–8. Thus, until the Sentencing Commission updates § 1B1.13 to apply to compassionate-release motions filed by defendants, "district courts have full discretion . . . to determine whether an 'extraordinary and compelling' reason justifies compassionate release" in a defendant-filed motion. *Id.* at *7.

As the moving party, Defendant bears the burden to establish the considerations relevant to his motion for compassionate release. *See United States v. Rodriguez*, 896 F.2d 1031, 1033 (6th Cir. 1990). Each consideration is addressed in turn.

### A. Extraordinary and Compelling Reasons

Although the Court is no longer confined by the Sentencing Commission's policy statement on compassionate release, *see Jones*, 2020 WL 6817488, at *7–9, the Court notes that Defendant's medical conditions would satisfy the definition of "extraordinary and compelling reasons" in USSG § 1B1.13. Application Note 1(A) to § 1B1.13 of the United States Sentencing Guidelines states that "extraordinary and compelling reasons" for a sentence modification based on a defendant's medical condition exist when: (i) "[t]he defendant is suffering from a terminal illness" or (ii) the defendant is:

4

> (I) suffering from a serious physical or medical condition,
> (II) suffering from a serious functional or cognitive impairment, or
> (III) experiencing deteriorating physical or mental health because of the aging process,
>
> that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.

The Government concedes Defendant's underlying health conditions qualify as extraordinary and compelling reasons for release. (Doc. 39 at 9.) Defendant's COPD and heart issues place him at greater risk of severe illness should he contract COVID-19. His illness is serious enough that a cardiologist indicated he was in heart failure. (Doc. 32-2.) The CDC advises "the best way to prevent illness is to avoid being exposed to [the] virus." *Ways COVID-19 Spreads*, Ctrs. for Disease Control, https://www.cdc.gov/coronavirus/2019-ncov/prevent-getting-sick/how-covid-spreads.html (last visited Nov. 30, 2020) (emphasis omitted). To avoid infection, the CDC recommends individuals wash their hands often, avoid close contact with people who are sick, and stay at least six feet apart from individuals who may be infected. *How to Protect Yourself*, Ctrs. for Disease Control, https://www.cdc.gov/coronavirus/2019-ncov/prevent-getting-sick/prevention.html (last visited Nov. 30, 2020).

Despite the BOP's efforts to contain the virus and keep inmates safe, Defendant's ability to comply with the CDC's recommendations to avoid becoming infected with COVID-19 is substantially diminished within the environment of his correctional facility. At Defendant's facility, several inmates previously have tested positive and two inmates have died from COVID-19, so Defendant appears to be at risk of exposure if he remains within the facility. Defendant suffers from a serious physical or medical condition from which he is not expected to recover and that substantially diminishes his ability to provide self-care within the environment of

a correctional facility. Accordingly, under its own analysis and according to the guidance in § 1B1.13, the Court finds Defendant has demonstrated extraordinary and compelling reasons for his release based on his medical conditions.[1]

### B. Section 3553(a) Factors

In analyzing a motion for compassionate release, the Court next must consider the § 3553(a) factors. *See* 18 U.S.C. § 3582(c)(1)(A); *Jones*, 2020 WL 6817488, at *6–7. Under 18 U.S.C. § 3553(a), the Court considers the following factors in determining the sentence to be imposed:

> (1) the nature and circumstances of the offense and the history and characteristics of the defendant;
> (2) the need for the sentence imposed--
>     (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
>     (B) to afford adequate deterrence to criminal conduct;
>     (C) to protect the public from further crimes of the defendant; and
>     (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;
> (3) the kinds of sentences available;
> (4) the kinds of sentence and the sentencing range established for—
>     (A) the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines . . .
> (5) any pertinent policy statement . . .
> (6) the need to avoid unwarranted sentencing disparities among defendants with similar records who have been found guilty of similar conduct; . . .

When the same judge who sentenced a defendant is the one to consider the defendant's motion for compassionate release, the judge's analysis of the § 3553(a) factors at the initial sentencing hearing can be considered along with his or her analysis in connection with the § 3582 motion. *Jones*, 2020 WL 6817488, at *11.

---

[1] Defendant asserts his age is also an extraordinary and compelling reason. However, as his medical conditions provide an extraordinary and compelling reason for release, the Court need not evaluate whether his age does as well.

6

Concerning the nature and circumstances of the offense, Defendant's offense arose from his repeated email and chat messages with an undercover officer who pretended to have a seven-year-old daughter. (Sealed PSR at 4.) During these conversations, Defendant solicited, through the undercover officer, sex with the minor. (*Id.*) Defendant sent the undercover officer multiple pornographic images, several of which were child pornography. (*Id.* at 5–6; Doc. 30.) Defendant also asked the undercover officer to take explicit photographs of both herself and the minor. (Sealed PSR at 6.) Based on these exchanges, law enforcement executed a search warrant at Defendant's residence, where they found more child pornography. (*Id.*) Defendant's offense therefore involved minors, as he enticed a notional minor to engage in sexual activity and, although not charged, was in possession of child pornography. (Sealed PSR at 4–7.) The identities of the children in the child pornography he possessed and shared are unknown, but Defendant's "viewing of these types of pornographic images and videos helped cultivate and expand the market for such material." (*Id.* at 7.)

The circumstances of Defendant's offense are serious, and his sentence reflects the seriousness of his offense. The Court sentenced Defendant to 180 months' imprisonment (Doc. 16), a sentence in the upper-range of his Guidelines range (Sealed PSR at 16). In addition, the Court imposed special conditions of supervised released based on Defendant's sex offense, and he will be subject to these special conditions for life. (Doc. 16 at 4–5.) Defendant has been incarcerated for over twelve years, and the BOP is scheduled to release him in less than one month. As a result, Defendant's time incarcerated has reflected the seriousness of his offense. The significant amount of time served by Defendant should specifically deter him from further criminal conduct, and his permanent conditions of supervised release likewise should aid in deterrence.

As to the need to protect the public, the Court finds several considerations relevant. Upon release, Defendant represents he will return home to McMinnville, Tennessee. (Docs. 32, 35.) It was in this home where his federal offense occurred. (*See* Sealed PSR at 6.) No evidence has been presented to show Defendant engaged in rehabilitation while incarcerated, such as completion of sex-offender treatment programs. *See, e.g.*, *United States v. Pitcock*, Case No. 15-cr-60222-BLOOM, 2020 WL 3129135, at *4 (S.D. Fla. June 12, 2020) (finding "there is no evidence before the Court that [the Defendant] has completed any treatment regimen or programs that would inform whether the Defendant is no longer a danger"); *United States v. Mitchell*, No. 2:12-cr-0401 KJM, 2020 WL 2770070, at *4 (E.D. Cal. May 28, 2020) (denying compassionate release motion, in part, based on the absence of "any evidence supporting defendant's rehabilitation"). Further, the Court has some concern that Defendant did not provide "a detailed release plan imposing conditions to prevent the likelihood of defendant's reoffending from his home." *Mitchell*, 2020 WL 2770070 at *4; *see also United States v. Hylander*, Case No. 18-cr-60017-BLOOM, 2020 WL 1915950, at *3 (S.D. Fla. Apr. 20, 2020) (finding release would be a danger to the community as "Defendant proposes to be released to [his] home . . . which is precisely the location in which the offense for which he was convicted was committed, and presents a concern that Defendant will reoffend").[2]

But those concerns must be considered alongside the time remaining on Defendant's sentence, just under one month. The protection afforded to the public likely is not increased

---

[2] The Court notes the cited portions of these cases address whether an element within the second requirement of compassionate release was satisfied. Again, the second requirement has since since been found inapplicable to compassionate release motions brought by a defendant, *Jones*, 2020 WL 6817488, at *7–9, but, even so, the Court finds these considerations relevant to the § 3553(a) factors.

8

substantially by incarcerating Defendant for one more month, which also should be considered in light of Defendant's underlying health conditions and COVID-19.  Upon release, Defendant's permanent conditions of supervised release also should help to protect the public from any future crimes by Defendant.  Those conditions include ones specifically designed for sex offenders, including: (1) participation in a program of sex offender mental health treatment; (2) sex offender registration; (3) prohibition on possession or use of computers and electronic devices with Internet access, absent approval by his probation officer; and (4) consent to searches of electronic devices and computers.  (Doc. 16 at 4–5.)

The Court also has considered the need to avoid unwarranted sentencing disparities.  Defendant has served most of his sentence and is scheduled for release in one month, so no disparity is created by granting Defendant's motion for compassionate release.

Given the present circumstances concerning COVID-19, Defendant's likely susceptibility to the virus, and the short period of time left on Defendant's sentence—less than one month—the Court finds the § 3553(a) factors support granting Defendant's motion for compassionate release.

## IV.    CONCLUSION

For the reasons set forth above, Defendant's motion for compassionate release (Doc. 32) is **GRANTED**.  It will be **ORDERED** that Defendant is to be released from the custody of the Bureau of Prisons.  Defendant's previously imposed term of supervised release is unchanged and will begin following his release from custody.

**AN APPROPRIATE ORDER WILL ENTER.**

**/s/**_____
**CURTIS L. COLLIER**
**UNITED STATES DISTRICT JUDGE**

9